# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| EMMANUEL A. LUGO, | ) | |
| Plaintiff, | ) | **FIRST AMENDED COMPLAINT** |
| v. | ) | **Case No.** 0:25-cv-02585-ECT-JFD |
| | ) | |
| CONCENTRIX CORPORATION, | ) | |
| Defendant. | ) | |

## (RETALIATION, BENEFITS INTERFERENCE, DIGITAL HARASSMENT, AND CLASS-BASED CIVIL RIGHTS VIOLATIONS)

### PREFACE

This case presents a stark example of modern retaliation in the workplace—retaliation that transcends conventional misconduct and instead combines psychological pressure, digital intrusion, benefits interference, and systemic obstruction.

Plaintiff **Emmanuel A. Lugo,** a **high-performing, multilingual professional,** was tasked with enterprise-level responsibilities at **Concentrix Corporation,** including strategic outreach for **Amazon, Google, Meta, Microsoft, and Intuit, etc.** Despite documented success, Plaintiff was denied fair **compensation, advancement, and accommodation.**

When he raised internal concerns and filed protected agency complaints, Plaintiff was met with escalating retaliation—surveillance-themed phishing, metadata tracking, medical coverage disruptions, and psychological destabilization. His personal devices were compromised, spiritual identity targeted, and lawful access to benefits revoked.

This lawsuit is not only personal. It seeks accountability for a pattern of employer retaliation that weaponizes access, data, and silence. It is backed by more than 30 evidentiary exhibits, multiple federal agency filings, and digital forensic logs. Plaintiff respectfully requests full legal redress and structural remedies for himself and other similarly harmed employees.

## I. JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action pursuant to **28 U.S.C. § 1331,** as Plaintiff's claims arise under the following federal statutes:

   - **Title VII of the Civil Rights Act of 1964** (42 U.S.C. § 2000e et seq.)

   - **Americans with Disabilities Act** (ADA), as amended (42 U.S.C. § 12101 et seq.)

   - **Family and Medical Leave Act** (FMLA) (29 U.S.C. § 2601 et seq.)

   - **Employee Retirement Income Security Act** (ERISA) (29 U.S.C. § 1132, § 1140, § 1166)

   - **Fair Labor Standards Act** (FLSA) (29 U.S.C. § 201 et seq.)

   - **Computer Fraud and Abuse Act** (CFAA) (18 U.S.C. § 1030)

   - **Electronic Communications Privacy Act** (ECPA) (18 U.S.C. § 2510 et seq.)

   - **National Labor Relations Act (**NLRA) (29 U.S.C. § 151 et seq.)

   - **Civil Rights Act of 1871** (42 U.S.C. § 1985(2)-(3))

   - **Declaratory Judgment Act** (28 U.S.C. §§ 2201-2202)

2. This Court also has **supplemental jurisdiction** under **28 U.S.C. § 1367(a)** for Plaintiff's state-law claims, including violations of the **Minnesota Human Rights Act (MHRA)** and **Minnesota Whistleblower Act.**

3. Venue is proper in this District under **28 U.S.C. § 1391(b)** as the acts and omissions giving rise to this Complaint occurred in Minnesota, where Plaintiff was employed by Defendant and where the harm primarily took place.

4. Plaintiff satisfied all administrative prerequisites for suit, including:

   • Filing a charge of discrimination with the **U.S. Equal Employment Opportunity Commission** (EEOC) and the **Minnesota Department of Human Rights** (MDHR);

   • Receiving a **Right to Sue** letter on **July 9, 2025.**

5. Plaintiff filed agency complaints with **OSHA**, **MNOSHA**, **NLRB**, **FTC**, **CMS/OIG**, **CFPB**, and **HIPAA enforcement authorities**, detailing retaliation, digital surveillance, and benefit interference.

6. The Court has authority to grant declaratory, injunctive, equitable, and monetary relief, including class-aware remedies under **Federal Rule of Civil Procedure 23,** as further detailed below.

## II. PARTIES

7. **Plaintiff Emmanuel A. Lugo** is a former employee of Concentrix Corporation, hired on **August 11, 2023**, and most recently assigned to high-level strategic sales campaigns within the organization's Enterprise division. At all relevant times, Plaintiff resided in **Minnesota** and was employed under the title **"Senior Business Development Representative."** He is a

**multilingual, neurodivergent, and spiritually affiliated professional** with protected status under federal and state civil rights statutes. He brings this action **pro se** as both an individual and a class-aware representative of similarly situated employees.

8. **Defendant Concentrix Corporation** is a global business process outsourcing (BPO) company headquartered in California and registered to do business in the State of Minnesota.

9. Concentrix was the Plaintiff's employer within the meaning of **Title VII, ADA, FMLA, and other applicable statutes,** and was responsible for the acts and omissions described herein. It operates across technology, marketing, and customer experience divisions and **retains over 400,000 employees globally.**

10. At all times relevant to this action, Defendant acted through its officers, employees, agents, and contractors, including but not limited to:

- **Jen King** – Plaintiff's direct supervisor;

- **Zarine Pardiwalla** – Head of Center of Excellence;

- **Camille Rosalez** – PHR representative;

- **Monti B. Keller** – Senior Vice President;

- **Brendan O'Shaughnessy** – SVP of Marketing & BDR Operations;

- **Jacqueline Potts** – EVP, Global Sales Organization;

- **Jillene Jensen** and **William Thompson** – HR/legal officers aware of Plaintiff's internal grievance and post-notice retaliation.

11. Each of these actors was directly involved in, or had knowledge of, the retaliatory conduct and resulting harm described herein.

### III. PROCEDURAL HISTORY

12. On **May 22, 2025**, Plaintiff submitted a formal written grievance to Concentrix Human Resources alleging **retaliation, misclassification, denial of benefits, and escalating psychological harm.** The grievance included a mutual separation proposal and referenced internal interference.

13. On **June 20, 2025**, Plaintiff filed this civil action (***Lugo v. Concentrix*, Case No. 0:25-cv-02585-ECT-JFD)** in the **U.S. District Court for the District of Minnesota.**

14. By that time, Plaintiff had also filed complaints with the **EEOC, OSHA, MNOSHA, MDHR, NLRB, FTC, CMS/OIG, CFPB,** and **HIPAA enforcement authorities.**

15. On **July 9, 2025**, the **U.S. Equal Employment Opportunity Commission** issued Plaintiff a formal **Right to Sue Letter**, confirming exhaustion of administrative remedies under **Title VII** and the **ADA.**

16. On **July 16, 2025**, Defendant filed a **vague and partial Answer** to the original Complaint, while Plaintiff's home surveillance systems remained disabled and following the emergence of digital spoofing patterns detailed in Exhibit Set BB.

17. On **July 22, 2025**, Plaintiff filed a **Notice of Placeholder for Supplemental Exhibit Series** (Dkt. 9), notifying the Court and Defendant of the forthcoming **First Amended Complaint.**

18. As of **July 30, 2025**, Plaintiff has filed **over 30 evidentiary exhibits** (Exhibit Sets AA through DD.9), multiple sworn declarations, and a formal **Notice of Continued Retaliation (Dkt. 24)**, documenting post-filing harm.

19. Plaintiff now submits this **First Amended Complaint** pursuant to **Federal Rule of Civil Procedure 15(a)(2).** No scheduling order has been entered, and this amendment is submitted prior to the close of pleadings and without prejudice to Defendant's right to respond.

20. The purpose of this Amended Complaint is to:

- **Expand factual allegations;**

- **Incorporate agency outcomes and retaliation timeline;**

- **Strengthen legal theories;**

- **Assert class-based and systemic harms under Rule 23;**

- **And seek monetary, injunctive, declaratory, and equitable relief.**

## IV. FACTUAL ALLEGATIONS

21. Plaintiff **Emmanuel A. Lugo** began employment with **Concentrix Corporation** on **August 11, 2023**, as a **Senior Business Development Representative (BDR)** under the title *Senior Professional II*, with a base salary of **$65,000/year,** and an incentive target of 33%.

22. In his first several months, Plaintiff immediately demonstrated **exceptional performance**, producing multilingual outreach across **English, Spanish,** and **French,** executing complex persona research, and supporting multiple enterprise-level accounts. Colleagues and leaders praised Plaintiff's client-facing confidence, deep market insights, and growth-oriented mindset.

23. Despite clear success, Plaintiff was denied:

- **Access to essential tools** (e.g., Asana, ADP - Payroll dashboards);

- **Earned commissions** (e.g., $500+ for off-hours EMEA work);

- **Career advancement or title reclassification;**

- **Transparent inclusion** in bonus structures or opportunity tracking.

24. Between **February and December 2024**, Plaintiff received unsolicited personal gifts from supervisor **Jen King**. These included food and personal items that were never explained or formally acknowledged. The behavior created confusion and emotional discomfort

25. In **January 2025**, Plaintiff's role was covertly expanded. Without promotion or reclassification, he was tasked with full **Account Executive (AE)-level** duties, including strategic reporting, executive engagement, and multilingual coordination across global territories. He was placed on high-profile strategic accounts including:

- **Amazon**

- **Meta**

- **Google**

- **Microsoft**

- **Intuit**

26. Though still classified as a Senior BDR, Plaintiff was tasked with full **Account Executive (AE)-level responsibilities**, including:

- Complex persona and buying-center deep research

- Engagement with Executive VPs and Global Program Leaders

- Weekly delivery of campaign results across multiple time zones

- Strategic coordination of cross-sell and upsell targets

- Management of multilingual communications across **EMEA, LATAM, and North America**

27. By **May 22, 2025**, Plaintiff had contributed over **$51.89 million** in qualified sales pipeline. Nevertheless, he was denied tools, commissions, and access to strategic systems needed for visibility and incentive participation.

28. Plaintiff submitted a formal internal grievance on **May 22, 2025**, citing retaliation, misclassification, and escalating emotional distress. No corrective action was taken.

29. **May 2025**, Plaintiff suffered worsening **panic attacks, chronic back pain, chronic migraines, and cognitive exhaustion**, leading to a formal request for leave and medical support. At this point, he began experiencing **access interference**, benefit confusion, and gaslighting behavior from **Jen King**, **Jacqueline Potts**, **Camille Rosalez (HR), Jillene Jensen, Zarine Pardiwalla,** and other agents of Defendant.

30. Plaintiff submitted a formal internal grievance on **May 22, 2025**, citing retaliation, misclassification, and escalating emotional distress. No corrective action was taken.

31. Following **his grievance and whistleblower activity,** Plaintiff experienced intensified retaliation, including:

- **Digital spoofing** (Google, T-Mobile, Bitdefender alerts);

- **Metadata-based phishing** (Snapchat, SendGrid, WP Mail SMTP);

- **Blocked access** to UnitedHealthcare, Express Scripts, ADP - LeaveSource;

- **Surveillance-themed attacks** on his spiritual alias account (therealmsseer@gmail.com).

31. Over the course of June and July 2025, Plaintiff's situation deteriorated further into **retaliatory digital interference, spoofing, surveillance, and spiritual targeting** which are documented in **Exhibits BB.1–BB.7 and DD.7**.

32. These events coincided with worsening physical and psychological symptoms, including:

- **Chronic back midline thoracic pain, chronic migraines and panic episodes;**

- **Sleep disruption, depression, paranoia, and medical deterioration;**

- **Delayed or denied access to prescriptions and therapy.**

33. Named individuals with knowledge of or participation in the misconduct include:

- **Jen King**, who directly withheld tools and manipulated performance documentation;

- **Camille Rosalez**, HR, who delayed grievance response and failed to protect Plaintiff's legal rights;

- **Monti B. Keller**, SVP, who approved access later obstructed by others;

- **Zarine Pardiwalla**, Head of Center of Excellence, who confirmed internal retaliation;

- **Brendan O'Shaughnessy**, SVP of Marketing, who obstructed promotion;

- **Jacqueline Potts**, EVP of Global Sales, who obstructed career advancement and allowed systemic miscommunication;

- **Jillene Jensen** (PHR) and **William Thompson** (Concentrix's Legal Counsel), who were copied on formal grievances but failed to intervene.

34. Despite repeated outreach and documentation of retaliation, Plaintiff was denied resolution or accommodation. Agency filings **(EEOC, OSHA, FTC, HIPAA)** were met with further targeting.

35. Between **June and July 2025**, Plaintiff's condition worsened into emotional collapse, spiritual destabilization, and forced constructive discharge  as detailed in Exhibits DD.4, DD.5, DD.6, and BB.1 through BB.7.

## V. LEGAL CLAIMS

## COUNT 1 – RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 *(42 U.S.C. § 2000e-3(a))*

36. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

37. Plaintiff engaged in protected activity under **Title VII** by reporting workplace retaliation, misclassification, and discriminatory treatment to:

- **Concentrix Human Resources** (via formal grievance on May 22, 2025);

- **The U.S. Equal Employment Opportunity Commission** (Exhibit AA.2);

- **The Minnesota Department of Human Rights** (Exhibit AA.3);

- **And other federal oversight bodies.**

38. Following these protected disclosures, Plaintiff experienced a series of materially adverse employment actions, including but not limited to:

- **Denial of earned commissions;**

- **Revocation of essential tools** (e.g., Asana, Salesforce visibility);

- **Manipulation of performance reviews** (Exhibit DD.3);

- **Retaliatory platform lockouts** (Exhibits CC.1 through CC.6);

- **Surveillance-based phishing and metadata targeting** (Exhibits BB.1 through BB.5);

- **Emotional destabilization** and **forced constructive discharge** (Exhibit DD.4)

39. The timing of these adverse actions directly followed Plaintiff's **EEOC** intake (filed June 5, 2025) and **MDHR/OSHA** complaints, supporting a strong inference of retaliatory motive.

40. Defendant's agents, including **Jen King, Jacqueline Potts, Camille Rosalez, Monti B. Keller, Zarine Pardiwalla, Brendan O'Shaughnessy, William Thompson**, and **Jillene Jensen**, either participated in or knowingly condoned these retaliatory acts.

41. These actions were not isolated miscommunications; they formed a pattern of psychological pressure, procedural sabotage, and targeted silencing following Plaintiff's protected reports.

42. As a direct and proximate result of this unlawful retaliation, Plaintiff suffered:

- **Emotional distress** and mental health decline;

- **Financial harm** through denied commissions and benefits;

- **Reputational damage** and career derailment;

- **Constructive discharge** and ongoing trauma.

43. Defendant's conduct was **intentional, malicious, and in willful disregard** of Plaintiff's federally protected rights under **Title VII.**

44. Plaintiff seeks all available remedies under **42 U.S.C. § 2000e-5(g),** including but not limited to:

- Compensatory and punitive damages;

- Back pay and front pay;

- Reinstatement or declaratory judgment confirming constructive discharge;

- Injunctive relief;

- And all other relief this Court deems just and proper.

## COUNT 2 – DISABILITY DISCRIMINATION AND RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

*(42 U.S.C. §§ 12112, 12203)*

45. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

46. Plaintiff is a qualified individual with a disability as defined under the ADA. His conditions include diagnosed **panic disorder, PTSD, chronic back midline thoracic pain, chronic migraines**, and **sleep-related neurological impairment**, as confirmed by primary care and therapy records.

47. In **May 2025**, Plaintiff disclosed his mental and physical health conditions to Defendant and formally requested medical leave and reasonable accommodation. He concurrently began **EMDR trauma therapy** and sought protected **short-term disability (STD)** leave.

48. Defendant was made aware of these disabilities through:

- Internal grievance filings and medical correspondence;

- Requests for leave and accommodations under **FMLA/ADA** (Exhibits CC.1, CC.4, CC.6);

- Direct communications to HR representatives including **Camille Rosalez** and **Beth Knape.**

49. In response, Defendant failed to engage in any meaningful interactive process and instead:

- **Delayed or denied STD documentation** (Exhibit CC.3);

- **Blocked healthcare platform access** (UHC, Omada, Express Scripts);

- **Denied Plaintiff timely COBRA information** (Exhibit CC.1);

- **Sabotaged therapeutic continuity** (Exhibit CC.4);

- **Removed benefits mid-treatment despite active certification;**

- **Accelerated psychological pressure** during Plaintiff's approved leave period.

51. Plaintiff was retaliated against for invoking **ADA** rights. The retaliation included:

- **Heightened scrutiny and metadata-based targeting** (BB.1–BB.5);

- **Isolation, digital intrusion, and benefit lockouts;**

- **Reputational suppression and constructive emotional destabilization** (DD.4).

52. The actions of Defendant and its agents caused Plaintiff to suffer:

- **Interrupted medical care and spiritual trauma;**

- **Panic attacks, cognitive collapse, and medication disruption;**

- **Constructive discharge due to a hostile, unaccommodating environment.**

53. Defendant's conduct constituted both:

   a) **Discrimination** based on disability, in violation of **42 U.S.C. § 12112(a)**; and

   b) **Retaliation** for engaging in **ADA-protected activity,** in violation of **42 U.S.C. § 12203(a)**.

54. These acts were committed knowingly, willfully, and in bad faith, disregarding Plaintiff's civil rights and medical safety.

55. Plaintiff seeks full relief under the ADA, including:

- **Compensatory and punitive damages;**

- **Declaratory judgment** confirming unlawful disability-based discrimination;

- **Injunctive relief** requiring audit of internal ADA and STD response protocols;

- **And all other equitable and legal remedies this Court deems appropriate.**

## COUNT 3 – INTERFERENCE AND RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT (FMLA)

*(29 U.S.C. §§ 2615(a)(1)–(2))*

56. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

57. Plaintiff was a covered employee under the **FMLA,** having worked the requisite hours and having documented serious health conditions including **PTSD, chronic back midline thoracic pain, chronic migraines, and panic disorder.**

58. In **May 2025**, Plaintiff formally requested medical leave and short-term disability protections due to worsening physical and emotional symptoms. His treating providers confirmed the need for leave and submitted required documentation to Defendant's HR representatives and vendors.

59. Plaintiff's leave was improperly managed and obstructed by Defendant and its agents, including **Camille Rosalez**, **Jen King, Beth Knape**, **Jacqueline Potts**, and **William Thompson**, through the following conduct:

- **Blocking access to the (ADP) LeaveSource platform** (Exhibit CC.1);

- **Failing to provide timely COBRA information** (Exhibits CC.1, CC.4);

- **Denying access to benefits portals** (UHC, Express Scripts, ADP, Omada) during the leave window (CC.4, CC.6);

- **Retroactively billing** Plaintiff $496.16 for medical coverage without notice (CC.1, CC.6);

- **Pressuring** Plaintiff to return to work while medical needs were ongoing and unresolved.

60. These actions constitute **interference** with Plaintiff's FMLA rights under **29 U.S.C. § 2615(a)(1)**.

61. In addition, Defendant **retaliated** against Plaintiff for requesting leave and exercising protected rights by:

- **Revoking critical access to systems** needed for treatment and financial continuity;

- **Increasing digital surveillance and psychological pressure** during leave (BB.2, BB.3);

- **Circulating misleading internal documentation** of Plaintiff's employment status (CC.2);

- **Withholding short-term disability benefits and delaying STD verification** (CC.3)

61. These acts constitute **retaliation** in violation of **29 U.S.C. § 2615(a)(2)**.

62. As a direct and proximate result of Defendant's unlawful interference and retaliation, Plaintiff experienced:

- **Denial** of medically necessary leave and prescriptions;

- **Financial harm** due to coverage gaps and retroactive charges;

- **Emotional collapse** and **constructive discharge** (Exhibit DD.4).

63. Plaintiff seeks all available remedies under the **FMLA,** including:

- **Reinstatement or compensatory damages in lieu thereof;**

- **Liquidated damages** under 29 U.S.C. § 2617;

- **Equitable relief** including declaratory judgment and audit of FMLA procedures;

- **And all other relief** this court deems just and proper

**COUNT 4 – MISCLASSIFICATION AND WAGE SUPPRESSION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA)**

*(29 U.S.C. §§ 201 et seq.)*

64. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

65. Plaintiff was employed by Defendant under the formal title **Senior Business Development Representative (BDR)**, Career Level II, Grade 8B, with an annual base salary of **$65,000** and an incentive target of 33%.

66. In early 2025, Plaintiff was assigned to strategic global campaigns for **Amazon, Meta, Google, Microsoft, and Intuit**, and was tasked with duties consistent with those of **an Account Executive (AE)**, <u>including:</u>

- Managing global enterprise accounts **(Amazon, Google, Meta, Microsoft, Intuit, etc);**

- Delivering executive briefings, account research, and technical translations;

- Creating internal dashboards and regional enablement materials used by directors and executive teams;

- Handing off over 25 SQLs across **EMEA, LATAM, and North America.**

- Driving pipeline generation exceeding **$51.89 million**

67. Despite this expanded scope, Plaintiff :

- **Was never reclassified** into a role with appropriate wage protections;

- **Was denied transparency** into incentive tracking and deal attribution (Exhibits DD.2–DD.6);

- **Did not receive overtime pay, bonus alignment, or proper performance reviews reflective of duties** (DD.3);

- **Was systematically blocked** from work tools (e.g., Asana, SFDC) required to validate incentive eligibility (DD.1-A, DD.3-A).

68. The misclassification caused Defendant to **underpay** Plaintiff for strategic labor while obscuring internal documentation trails and retaining wage-related cost advantages.

69. These actions constitute violations of:

- **29 U.S.C. § 206** – failure to pay minimum and earned wages based on true role scope;

- **29 U.S.C. § 207** – denial of compensation tied to work hours, productivity, and misclassified labor.

70. As a direct result of this wage suppression and classification fraud, Plaintiff experienced:

- **Unpaid labor** for strategic, AE-level output;

- **Denied opportunity** for role-based advancement;

- **Constructive discharge** under financially coercive conditions

71. Defendant's actions were **knowing, willful, and undertaken to minimize liability and costs.**

72. Plaintiff seeks all available remedies under the **FLSA,** including:

- Back wages and incentive bonuses unlawfully withheld;

- Liquidated damages under **29 U.S.C. § 216(b);**

- Declaratory judgment of misclassification;

- And all other equitable and compensatory relief the Court deems proper.

**COUNT 5 – BENEFITS INTERFERENCE AND RETALIATION IN VIOLATION OF ERISA**

*(29 U.S.C. §§ 1140, 1132, 1166)*

73. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

74. At all relevant times, Plaintiff was enrolled in one or more **employee benefit plans** governed by the **Employee Retirement Income Security Act (ERISA)**, <u>including but not limited to:</u>

- Group health insurance administered by **UnitedHealthcare /Optum /Omada /Express Scripts/ Allina Health**

- Disability insurance administered through **UNUM**

- Eligibility under **Concentrix's ESPP, Fidelity 401K, retirement, and PTO-linked plans**

75. After raising internal grievances and protected agency complaints, Plaintiff experienced **sudden, unexplained interference** with access to his benefits, including:

- **Sudden revocation of access** to UHC, Omada, Allina Health (MyChart), and Express Scripts accounts (Exhibit CC.4);

- **Retroactive removal** from Allina Health and MyChart services (Exhibit CC.3);

- **Withholding of COBRA** election information until **July 14, 2025**, with retroactive coverage billed from **June 3, 2025**, while Plaintiff remained on approved medical leave (Exhibits CC.1, CC.6);

- Obstruction of pharmacy refills, benefit verifications, and STD processing (CC.3, CC.4, CC.5).

76. Defendant's actions constitute unlawful **retaliation** under **ERISA § 510 (29 U.S.C. § 1140)**, as they were taken in response to Plaintiff's exercise of benefit rights and protected leave activity.

77. Defendant also violated **ERISA § 502 (29 U.S.C. § 1132)** by denying Plaintiff access to plan documentation, benefit portals, and the ability to enforce his rights in real time.

78. Defendant further violated **COBRA (29 U.S.C. § 1166)** by:

- **Failing to issue timely and lawful continuation coverage notices;**

- **Retroactively billing** Plaintiff without formal separation;

- **Issuing invoices** after plan access had already been blocked for weeks.

79. Defendant further denied Plaintiff:

- **Visibility into his ESPP deductions or holdings**

- Transparency regarding **E\*TRADE** or **Morgan Stanley** account use

- **Guidance on benefits continuation** despite his active leave status

80. As a direct result of these violations, Plaintiff experienced:

- **Emotional harm, therapy interruption, and medication denial;**

- **Financial losses** from out-of-pocket medical expenses;

- **Psychological distress** and **constructive discharge** (Exhibits CC.1–CC.6).

81. These actions **were not administrative errors but deliberate retaliation coordinated** by HR, benefits, and legal personnel with knowledge of Plaintiff's ongoing complaints.

82. Plaintiff seeks relief under **ERISA** and **COBRA statutes**, including:

- **Restitution of costs and unpaid benefits;**

- **Penalties** and **injunctive relief;**

- **Declaratory judgment** confirming unlawful retaliation and **COBRA violations;**

- And all remedies available under **29 U.S.C. §§ 1132, 1140, and 1166**

## COUNT 6 – UNAUTHORIZED ACCESS AND DIGITAL SURVEILLANCE IN VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (CFAA)

*(18 U.S.C. § 1030, (a) (5))*

83. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

84. Beginning in **June 2025**, shortly after Plaintiff filed agency complaints and his original federal complaint, he began experiencing repeated signs of **unauthorized access** to his personal computing devices, mobile networks, security cameras and secured accounts.

85. Incidents included:

- **Xfinity network breach** detecting 22 unrecognized devices connected to Plaintiff's home Wi-Fi (Exhibit BB.1.02);

- **T-Mobile login alert** on June 26, 2025, emulating a macOS environment and tied to metadata spoofing (BB.1.06);

- **Bitdefender spikes** reporting over 6,000–18,000 trackers blocked in one day (BB.1.04–.05);

- **Google and iCloud unauthorized login attempts**, including blocked collaboration from spoofed Apple ID (enc7r33s@icloud.com) (BB.2.03, BB.2.06);

- **Device takeover behavior** on Samsung S4 Ultra and Apple systems (BB.4)

- Massive spike in **metadata-payload emails** and phishing attempts (Snapchat, Nextdoor, Whoop) delivered to aliases and tracked by ProtonMail forensic logs

86. These incidents occurred without Plaintiff's consent and **exceeded any authorized access** to his devices, security cameras, cloud accounts, or Wi-Fi networks.

87. The timing of these digital intrusions aligns directly with court activity and whistleblower filings, suggesting a retaliatory or monitoring-based motive.

88. Defendant, or those acting in coordination with or on behalf of Defendant, **intentionally accessed protected computers and networks without authorization**, in violation of **18 U.S.C. § 1030(a)(2)(C)**.

89. These intrusions also caused damage and disruption to Plaintiff's devices and online safety, in violation of **18 U.S.C. § 1030(a)(5)(B) and (C)**, which prohibit the transmission of code or activity causing impairment to data, privacy, or system integrity.

90. As a direct and proximate result of these violations, Plaintiff suffered:

- **Emotional distress, panic attacks,** and **inability to safely use digital tools;**

- **Loss of device functionality, privacy** and **secure communications;**

- **Disruption of legal filings, spiritual outreach,** and **whistleblower documentation workflows**

91. Plaintiff has **preserved evidence of these violations, including screenshots, forensic logs, and metadata** (see Exhibits BB.1 through BB.4, and BB.6).

92. Plaintiff seeks all available relief under the **CFAA,** including:

- Compensatory and punitive damages;

- Declaratory judgment that Defendant's conduct constituted unlawful access;

- Injunctive relief to prevent future surveillance or digital harm;

- And all other remedies available under **18 U.S.C. § 1030(g).**

## COUNT 7 – UNLAWFUL INTERCEPTION OF ELECTRONIC COMMUNICATIONS IN VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT (ECPA)

*(18 U.S.C. §§ 2510–2523)*

93. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

94. Beginning in **June 2025**, Plaintiff received a series of unsolicited emails to his private and spiritual addresses, including:

- **emlugot@gmail.com** (personal);

- **therealmsseer@gmail.com** (spiritual alias).

95. These emails included embedded surveillance **trackers**, pixel payloads, and cloaked metadata structures delivered through platforms such as **SendGrid**, **Nextdoor**, **WP Mail SMTP**, **Whoop.com**, and **Intercom-Mail.com**.

96. ProtonMail's privacy detection protocols blocked these trackers and confirmed multiple behavioral surveillance attempts including location pings, device type logging, and open-time extraction.

97. These **interception attempts occurred after Plaintiff filed formal complaints** with the **EEOC, OSHA,** and **this Court** and followed a pattern of retaliatory metadata-based surveillance (Exhibits BB.2, BB.5, DD.7).

98. These actions violated **18 U.S.C. § 2511(1)(a)** by intentionally intercepting Plaintiff's electronic communications without consent and for unlawful retaliatory purposes.

99. The nature and timing of these messages including mystic-themed phrases **("What You Can't See CAN Hurt You", "Burn, baby Burn")** and cloaked calls to action demonstrate a clear attempt to provoke emotional destabilization and track Plaintiff's protected activity.

100. The campaign targeted multiple aliases and email clients simultaneously, confirming **behavioral mapping** and **systemic design beyond ordinary marketing practices.**

101. As a direct result of these unlawful interceptions, Plaintiff suffered:

- **Spiritual** and **psychological injury;**

- **Loss of secure digital communication;**

- **Heightened PTSD symptoms** and **constructive disengagement** from spiritual and legal platforms.

102. Plaintiff seeks all available remedies under the **ECPA,** including:

- Statutory and punitive damages under **18 U.S.C. § 2520;**

- Declaratory relief confirming the unlawful interception of protected communications;

- Injunctive relief to bar further interference with digital or spiritual communications.

## COUNT 8 – RETALIATION AND COERCION IN VIOLATION OF THE NATIONAL LABOR RELATIONS ACT (NLRA)

### *(29 U.S.C. § 158(a)(1))*

103. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

104. Plaintiff engaged in **protected concerted activity** under the **National Labor Relations Act (NLRA)** by:

- Raising internal complaints and proposals that addressed widespread structural and compensation issues;

- Seeking mutual protections for similarly situated employees facing misclassification, access denial, retaliation, and wage suppression;

- Filing grievances and communicating with federal agencies, including the **NLRB**, regarding patterns of institutional harm and retaliatory conditions.

105. These actions **reflect advocacy for group-level reform, transparency,** and the **rights of fellow employees not just individual complaints.**

106. In response, Defendant and its agents engaged in conduct that constitutes **unlawful interference and coercion**, including:

- **Blocking** Plaintiff's access to tools, platforms, and HR documentation (DD.2, CC.1–CC.5);

- **Subjecting** Plaintiff to retaliatory surveillance and digital harassment (BB.2, BB.5);

- **Isolating** Plaintiff from team operations, promotional opportunities, and account ownership;

- **Constructively discharging** Plaintiff through **escalating psychological** and **institutional pressure.**

108. Plaintiff submitted a formal **Unfair Labor Practice (ULP) charge** with the **National Labor Relations Board (NLRB) in June 2025**, supported by an original and updated affidavit. On **July 17, 2025**, a scheduled affidavit meeting with NLRB Agent **Nira Green** was **canceled the morning of**, within hours of Defendant's federal Answer.

109. This occurred despite a prior **agent reassignment confirmation from the NLRB Regional Director**, which had been issued in direct response to Plaintiff's concerns of bias after a phone call with the originally assigned agent, **Charles Chermark**. The reassignment was meant to ensure neutrality and protect Plaintiff's rights under the NLRA. The subsequent cancellation combined with silence from supervisory staff and suspicious timing coordination with federal litigation events raised credible concerns of retaliation, procedural abandonment, or undue influence on agency processes.

110. These actions constitute violations of **29 U.S.C. § 158(a)(1)**, which prohibits any interference with, restraint, or coercion of employees exercising their rights under **Section 7 of the NLRA.**

111. As a result, Plaintiff experienced:

- **Suppression** of protected speech and labor organizing efforts;

- **Retaliation** for invoking statutory rights to mutual aid and group advocacy;

- **Constructive discharge** and **silencing of legally protected** participation in labor processes.

113. Plaintiff seeks relief under the **NLRA,** including:

- Declaratory judgment confirming the retaliation and coercion;

- Compensatory and statutory damages;

- Referral of the matter for review by the **National Labor Relations Board or other federal oversight entities**

**COUNT 9 – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS UNDER** *42 U.S.C. § 1985(2)–(3) (Obstruction of Federal Testimony and Deprivation of Equal Protection)*

114. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

115. Beginning in **May 2025** and escalating throughout **July 2025,** Plaintiff was subjected to a **sustained and coordinated campaign of retaliation, obstruction,** and **psychological destabilization** following:

- His filing of formal internal grievances;

- His submission of complaints to federal agencies including the **EEOC, OSHA, NLRB, CMS/OIG, and FTC**;

- His filing of this federal civil action **(Lugo v. Concentrix, Case No. 0:25-cv-02585-ECT-JFD).**

116. Defendant, acting through its officers, HR personnel, legal representatives, and affiliated digital contractors, engaged in conduct designed to:

- **Deter** Plaintiff from testifying before federal agencies or in court;

- **Intimidate** Plaintiff using metadata surveillance and behavioral targeting;

- **Undermine** Plaintiff's mental and emotional stability prior to testimony.

117. These actions constitute a conspiracy to interfere with Plaintiff's civil rights under **42 U.S.C. § 1985(2)**, which prohibits persons from conspiring to deter any party or witness from attending or testifying in federal proceedings.

118. Defendant's agents acted in coordination to delay, neutralize, or deflect enforcement activity, including:

- The abrupt **cancellation of Plaintiff's NLRB affidavit interview** following reassignment due to bias (see ¶103);

- Patterned delivery of surveillance-themed digital attacks to Plaintiff's spiritual and personal accounts (Exhibits BB.3, BB.5, DD.7);

- Induced fear and isolation through Lockdown Mode triggers, phishing payloads, and spiritual identity targeting (BB.2, BB.5).

119. **Under § 1985(3)**, Defendant and its agents also conspired to deprive Plaintiff of equal protection of the laws and equal privileges by:

- **Singling out** Plaintiff for retaliation due to his neurodivergent, disabled, and spiritual identity status;

- **Engaging** in surveillance and coercive tactics unavailable to ordinary employees;

- **Structuring** internal systems to conceal abuse while presenting the appearance of procedural neutrality.

120. The conspiracy inflicted the following injuries:

- **Irreparable emotional** and **spiritual harm;**

- **Procedural suppression** of Plaintiff's civil testimony and whistleblower rights;

- **Loss of credibility** and legal momentum in multiple agency investigations.

121. Plaintiff respectfully seeks:

- Compensatory and punitive damages under **§ 1985(2)–(3);**

- Declaratory judgment acknowledging unlawful obstruction of testimony;

- Referral to the **U.S. Department of Justice Civil Rights Division** for investigation, as outlined in **Exhibit DD.9**.

**COUNT 10 – GOVERNMENT INTERFERENCE AND FAILURE TO PROTECT**

*(EQUITABLE CLAIM, BIVENS-LIKE THEORY—First and Fifth Amendment Protections; Procedural and Substantive Due Process)*

122. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

123. Between **May and July 2025**, Plaintiff submitted detailed legal and factual complaints to numerous federal and state agencies, including:

- The **Equal Employment Opportunity Commission (EEOC)** – Exhibit AA.2

- The **Occupational Safety and Health Administration (OSHA/MNOSHA)** – Exhibit AA.4

- The **Minnesota Department of Human Rights (MDHR)** – Exhibit AA.3

- The **National Labor Relations Board (NLRB)** – Exhibit AA.6

- The **Federal Trade Commission (FTC)** – Exhibit AA.1

- The **Consumer Financial Protection Bureau (CFPB)** – Exhibit AA.5

- The **Centers for Medicare & Medicaid Services / Office of Inspector General (CMS/OIG)** – Exhibit AA.6

- **HIPAA-related** oversight authorities – Exhibit AA.7

124.  Despite the detailed and corroborated nature of these complaints—including exhibits, timelines, and forensic logs—many of these agencies:

- **Closed** their files without investigation;

- **Redirected** Plaintiff to other agencies already involved;

- **Canceled key meetings** (e.g., the **July 17, 2025 NLRB affidavit interview**, despite prior reassignment confirmation after bias concerns);

- **Failed** to provide updates, status clarity, or coordination across departments.

125. These procedural gaps resulted in a **chilling effect** and placed Plaintiff in a state of **escalating legal, medical,** and **digital vulnerability** without **protection or accountability.**

126. Plaintiff does not allege intentional collusion between agencies and Defendant but asserts that **systemic inaction and procedural abandonment** by government actors collectively deprived him of constitutional access to redress.

127. These failures constitute a constructive deprivation of rights under:

- **First Amendment—**(right to petition government for redress of grievances); and

- **Fifth Amendment—**(due process and equal protection in pursuing legal remedies).

128. Plaintiff invokes **Bivens-like principles** of constitutional accountability and equitable relief, given that his direct **access to justice was undermined not just by Defendant, but by government entities entrusted to protect him**.

129. As a result of this failure, <u>Plaintiff suffered:</u>

- **Escalated retaliation** due to lack of enforcement oversight;

- **Loss of protection** for statutory rights and whistleblower remedies;

- **Mental health deterioration** and procedural fatigue.

130. Plaintiff seeks the following relief:

- Declaratory judgment acknowledging systemic failure to protect constitutional access to agency review;

- Equitable recognition of due process violations;

- Formal **referral to the U.S. Department of Justice Civil Rights Division**, as detailed in **Exhibit DD.9**, for independent oversight and investigation.

### COUNT 11 – CONSTRUCTIVE DISCHARGE

*(Retaliation, Hostile Work Environment, and Involuntary Separation)*

131. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

132. **At no point** did Plaintiff submit a formal resignation letter or voluntarily separate from his employment with Defendant Concentrix Corporation

133. Rather, between **March and July 2025**, Plaintiff was subjected to a persistent and escalating pattern of:

- **Retaliation** for protected complaints and agency filings (Counts 1–10);

- **Denial** of benefits, commissions, and tool access;

- **Psychological** and **emotional pressure amid spiritual identity targeting** (Exhibits BB.5, DD.4);

- **Medical neglect** and **blocked access** to approved health care and short-term disability support (CC.3, CC.4, CC.6).

134. Despite disclosing mental health challenges and requesting reasonable accommodation under the **ADA** and **FMLA,** Plaintiff was:

- **Labeled** a performance risk;

- **Isolated** from core systems and advancement pathways;

- **Denied** transparency on payroll, incentive credits, or leave status.

135. **No good faith corrective measures** were taken by HR or leadership to support or retain Plaintiff. On the contrary, Defendant **intensified retaliation** and **surveillance** after grievance submission.

136. Plaintiff's final request for a mutual separation proposal was submitted **in good faith** after all internal and legal avenues failed. Defendant **did not engage in meaningful resolution.**

137. The conditions described herein were **so severe, unrelenting,** and **psychologically destabilizing** that **no reasonable employee** could be expected to continue under them.

138. As a direct result of this **constructive discharge**, Plaintiff suffered:

- **Financial losses,** including loss of wages, benefits, and commissions;

- **Mental health breakdown** and **spiritual withdrawal;**

- **Ongoing reputational harm** and **fear of future retaliation**

139. Plaintiff seeks all available relief, including:

- Back pay and front pay in lieu of reinstatement;

- Emotional distress and reputational damages;

- Declaratory judgment confirming constructive discharge;

- Any additional equitable or legal remedies the Court deems appropriate.

## COUNT 12 – DECLARATORY AND INJUNCTIVE RELIEF

*(28 U.S.C. §§ 2201–2202)*

140. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

141. An actual and justiciable controversy exists between Plaintiff and Defendant regarding:

- The legality of Defendant's **retaliatory, discriminatory, and obstructive conduct;**

- Plaintiff's **legal rights to protection, redress,** and **restoration;**

- **Ongoing risks of digital surveillance, metadata manipulation,** and **reputational harm.**

142. Pursuant to **28 U.S.C. § 2201**, Plaintiff seeks a declaratory judgment stating that:

- Defendant violated Plaintiff's rights under one or more federal statutes, including **Title VII, ADA, FMLA, ERISA, CFAA, ECPA, and the NLRA**;

- Plaintiff was constructively discharged under retaliatory and intolerable conditions;

- Plaintiff's digital and professional targeting constituted unlawful surveillance and interference with civil rights.

143. Plaintiff further seeks injunctive relief under **28 U.S.C. § 2202**, including but not limited to:

- A **federal preservation order** prohibiting the deletion, alteration, or concealment of:

  - Plaintiff's emails, benefits records, complaint logs, and performance documents;

  - Digital access logs, metadata entries, surveillance tracking records, and ESPP deductions.

- An **audit and disclosure order** requiring Defendant to produce:

  - All records of metadata collection, ESPP enrollment activity, and digital access logs tied to Plaintiff;

  - Complete ADP payroll histories and any backend benefit modifications.

- A **transparency mandate** compelling Defendant to:

  - Disclose historical complaint data, whistleblower protections, and platform access policies for U.S. employees;

  - Publicly acknowledge any systemic retaliation or procedural gaps uncovered through this action.

144. These remedies are necessary to prevent the **continuation or recurrence** of unlawful acts and to secure Plaintiff's safety, reputation, and future prospects.

145. Plaintiff respectfully requests the Court issue the requested declaratory and injunctive relief in the interests of justice and deterrence.

**COUNT 13 – SECURITIES FRAUD AND UNAUTHORIZED ESPP DEDUCTIONS**

*(15 U.S.C. § 78j(b); SEC Rule 10b-5)*

146. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

147. On or about **June 30, 2025,** while Plaintiff was on approved short-term medical leave and receiving no regular payroll compensation, a transaction was executed in Plaintiff's name through the **Morgan Stanley at Work Employee Stock Purchase Plan (ESPP)**.

148. The transaction involved the purchase of **16.939 shares of CNXC stock** at $41.363 per share, totaling **$701.01**, as confirmed by an unsolicited email received on **July 15, 2025 at 2:48 AM CT** from **E\*TRADEAlerts-DoNotReply@etrade.com**.

149. Plaintiff:

- Was never provided a prospectus, election form, or contribution agreement;

- Had no access to any **E\*TRADE** or **Morgan Stanley** portal;

- Had not been paid or deducted any wages that could have funded the purchase

150. These facts constitute a **material omission and unauthorized action** in violation of **Section 10(b) of the Securities Exchange Act of 1934** and **SEC Rule 10b-5**, which prohibit fraudulent, manipulative, or deceptive practices in connection with the purchase or sale of securities.

151. Defendant's failure to disclose ESPP activity, obtain affirmative consent, or provide post-transaction documentation combined with its systemic control over ADP payroll, HR communications, and benefit portals **demonstrates willful and deceptive conduct.**

152. As a direct result, Plaintiff experienced:

- **Financial harm** from unauthorized payroll deduction and account creation;

- **Emotional distress** and **procedural confusion** during protected medical leave;

- **Heightened suspicion** of employer manipulation and digital coercion

153. Plaintiff seeks all available remedies under federal securities law, including:

- **Full restitution of unauthorized** deductions and stock gains/losses;

- Compensatory and punitive damages for **fraudulent conduct;**

- Penalties and referral to the **U.S. Securities and Exchange Commission (SEC)** for investigation;

- Any other equitable or legal relief this Court deems just and proper.

**COUNT 14 – WAGE THEFT AND PAYROLL MISREPRESENTATION**

*(Minn. Stat. §§ 181.032, 181.13; Common Law Fraud)*

154.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

155. Defendant Concentrix Corporation **willfully engaged in payroll manipulation and wage suppression by:**

- **Denying** Plaintiff earned commissions (including a $500 payment for off-hours EMEA work);

- **Executing** an unauthorized **$701.01 ESPP deduction** during protected medical leave (Count 13);

- **Blocking** Plaintiff's access to ADP pay stubs and historical payroll records;

- **Issuing** a **retroactive COBRA invoice for $496.16** without formal termination or proper notice.

156. These acts violated **Minnesota's Wage Theft Prevention statutes**, including:

- **Minn. Stat. § 181.032** (failure to provide accurate earnings statements and access to compensation documentation);

- **Minn. Stat. § 181.13** (failure to pay earned wages upon separation or constructive discharge)

157. Additionally, Defendant's conduct constituted **common law fraud**, as it:

Knowingly withheld material payroll information from Plaintiff;

- **Created or permitted false representations** about Plaintiff's compensation, benefits, and deductions;

- **Induced reliance on false** pay status, benefit eligibility, and platform functionality;

- **Caused foreseeable harm,** including financial loss, medical disruption, and constructive discharge

158. As a result, Plaintiff experienced:

- **Lost wages** and **commissions;**

- **Improper** medical billing and financial strain;

- **Emotional harm** tied to fraud, confusion, and abandonment.

159. Plaintiff seeks relief under both statutory and common law, including:

- Back pay and statutory penalties;

- Liquidated damages and interest;

- Pro Se' fees, and future attorney's fees (if permitted);

- Declaratory and injunctive relief to audit all payroll and deduction activity during Plaintiff's tenure;

- And any further relief this Court deems just and proper.

### COUNT 15 – RELIGIOUS AND SPIRITUAL RETALIATION UNDER TITLE VII

*(42 U.S.C. § 2000e-2(a); First Amendment Principles)*

160. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

161. Plaintiff maintains a sincere and protected spiritual identity expressed through writings, digital outreach, and a personal brand known as **"The Realms Seer."** This identity, and associated email alias **(therealmsseer@gmail.com)**, is **wholly unrelated** to Plaintiff's employment at **Concentrix Corporation.**

162. Following the filing of this federal lawsuit and associated whistleblower complaints, Plaintiff began receiving **a pattern of unsolicited, spiritually-themed phishing emails targeting his alias and personal email accounts.**

163. These emails contained:

- **Embedded surveillance trackers** (SendGrid, WP Mail SMTP, Intercom-Mail);

- **Mystic-themed psychological bait** and **manipulation;**

- Behaviorally timed metadata payloads designed **to induce fear, provoke anxiety, intent destabilization and perceived surveillance** (Exhibit BB.3, BB.5, DD.7).

164. The delivery of such emails **coincided directly** with key litigation and agency milestones, demonstrating intent to punish Plaintiff for **protected speech and whistleblower activity.**

165. Defendant, directly or through its agents, vendors, or coordinated metadata campaigns, **retaliated against Plaintiff on the basis of his spiritual identity**, in violation of **Title VII of the Civil Rights Act of 1964**.

166. Plaintiff's spiritual identity and email alias **were never used in connection** with Concentrix business and were accessed or targeted only after the initiation of protected activity, reinforcing the retaliatory motive and metadata-based surveillance intent.

167. As a result, Plaintiff suffered:

- **Emotional** and **spiritual trauma;**

- **Disruption** of his creative and metaphysical work;

- **Chilling of his public-facing spiritual advocacy** due to fear of retaliation

168. Plaintiff seeks all available remedies under **Title VII,** including:

- **Declaratory judgment** acknowledging spiritual identity-based retaliation;

- **Compensatory and punitive damages** for emotional and expressive harm;

- **Injunctive relief** barring any further use of spiritual alias targeting or metadata-triggered tracking linked to religious expression.

## COUNT 16 – PATTERN OR PRACTICE OF SYSTEMIC RETALIATION AND CLASS-BASED SUPPRESSION

*(Title VII, ADA, FMLA – Pattern and Practice Theory; Rule 23 Context)*

169. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

170. Beyond his individual experience, Plaintiff alleges that Defendant Concentrix Corporation has engaged in a **pattern or practice of systemic retaliation, benefit manipulation, and digital coercion** against employees who:

- Assert disability accommodations or protected medical leave;

- File internal or external grievances;

- Raise concerns regarding misclassification, wage irregularities, or spiritual discrimination.

171. Defendant has leveraged **metadata surveillance, benefit lockouts, SSO platform control**, and legal ambiguity to isolate, suppress, or constructively discharge vulnerable employees.

172. Plaintiff's experience documented across Exhibits AA through DD reveals a **repeated script of retaliation** involving:

- Access denial to platforms and benefits;

- Spiritual identity targeting through spoofed trackers;

- Emotional collapse induced by legal and procedural abandonment.

173. These actions disproportionately affect:

- **Neurodivergent or disabled employees;**

- **Employees engaging in protected spiritual or creative expression;**

- **Employees without legal representation or financial protection**

174. Under **Rule 23(b)(2)** of the Federal Rules of Civil Procedure, Plaintiff seeks relief that would benefit similarly situated employees and prevent future retaliation including:

- A **$25 million Victim Accountability Fund** for affected Concentrix employees (see Prayer for Relief);

- System-wide auditing of SSO, metadata, payroll, and HR retaliation pathways;

- Public disclosure of complaint trends and anti-retaliation enforcement protocols.

175. Plaintiff seeks **class-aware declaratory, injunctive, and restitutionary relief** to correct systemic abuse and create deterrence beyond this case.

## RESERVATION OF RIGHTS AND SEVERABILITY

To the extent that any portion of this First Amended Complaint particularly Counts 10 through 16, or those implicating digital surveillance, spiritual identity-based targeting, government inaction, or class-aware systemic retaliation is challenged on procedural, jurisdictional, or statutory grounds, **Plaintiff expressly preserves the following rights**:

- The right to amend, reframe, or replead such claims pursuant to **Federal Rule of Civil Procedure 15**;

- The right to **sever** specific counts or factual groupings into standalone actions if venue, statutory structure, or agency action so warrants;

- The right to reassert dismissed or withdrawn claims in future **federal, state, or administrative forums**, including where such claims are supported by delayed discovery, continuing violation theory, whistleblower protections, or digital forensics.

This reservation specifically applies to the following:

- **Counts 10 through 16**;

- Claims involving **metadata-based targeting**, **spiritual retaliation**, and **procedural erasure**;

- Agency inaction and whistleblower escalation frameworks cited in **Exhibits CC.6, DD.7, DD.8, and DD.9**;

- Plaintiff's right to pursue claims against **third-party contractors, forensic vendors, insurers, platform administrators**, and any **unidentified co-conspirators** as set forth in the body of this Complaint and Exhibit Index.

No individual count, request for relief, or evidentiary reference shall be construed to invalidate or undermine the Complaint as a whole. In the event any part of this pleading is dismissed in whole or part, **Plaintiff does not waive and affirmatively preserves all remaining claims and remedies.**

Plaintiff respectfully requests that the Court consider this Complaint in its **systemic context**, with each cause of action evaluated on its own **legal sufficiency, factual support, and independent grounds for relief**.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff **Emmanuel A. Lugo** respectfully demands that this Court enter judgment in his favor and against Defendant **Concentrix Corporation,** and award the following relief:

**A. Compensatory Damages**

- For lost wages, back pay, front pay, and lost benefits;

- For emotional distress, reputational harm, career derailment, and spiritual injury;

- For out-of-pocket medical expenses, medication disruptions, and therapy-related costs.

**B. Punitive Damages**

- For willful, malicious, and egregious retaliation;

- For unlawful surveillance, spiritual targeting, and coordinated metadata harassment;

- Pursuant to **Minn. Stat. § 363A.29, Subd. 4** (uncapped punitive damages under the Minnesota Human Rights Act), including but not limited to:

  a) Retaliation for disability-related accommodations,

  b) Suppression of legally protected reporting activity, and;

  c) Psychological injury inflicted through sustained systemic misconduct.

**C. Statutory Damages**

- Liquidated damages under the **FMLA** and **FLSA**;

- Penalties under **ERISA**, **COBRA**, **Wage Theft Prevention Statutes**;

- Statutory and punitive damages under the **CFAA**, **ECPA**, **Title VII**, and **ADA**

**D. Declaratory Relief**

- Declaring that Defendant violated Plaintiff's rights under federal and state law;

- Declaring that Plaintiff was constructively discharged;

- Declaring that digital surveillance, ESPP misappropriation, and retaliation occurred.

**E. Injunctive Relief**

- Prohibiting Defendant from deleting, modifying, or destroying any metadata, email logs, payroll records, or benefit records related to Plaintiff's employment;

- Compelling an audit of metadata access logs, ESPP deductions, HR complaint patterns, and SSO manipulation during Plaintiff's employment;

- Requiring Defendant to publicly disclose internal retaliation statistics and whistleblower protections

**F. Class Awareness and Accountability Fund**

- **Recognition that this case implicates a broader class of employees retaliated against through digital, financial, and procedural coercion;**

- Creation of a **$25 million Victim Accountability Fund** to be independently administered, benefiting affected U.S.-based employees between **November 2023 and May 2025**.

**G. Securities Oversight and Financial Recovery**

- Full restitution of any unauthorized stock activity, account creation, or payroll deductions via the **Morgan Stanley / E*TRADE ESPP program;**

- Referral of the CNXC transaction and related payroll violations to the **Securities and Exchange Commission (SEC)** and **Minnesota Department of Labor & Industry**.

**H. DOJ and Federal Oversight Referral**

- Referral to the **U.S. Department of Justice Civil Rights Division**, including:

  - **Employment Retaliation** (ADA, Title VII)

  - **Digital Surveillance** & CFAA/ECPA Claims

  - **ERISA / COBRA Enforcement** (EBSA / DOL)

  - **Whistleblower Retaliation** (NLRB, FTC, HHS-OCR)

    - As outlined in **Exhibits DD.8 and DD.9**.

Plaintiff respectfully requests DOJ oversight **not as a challenge** to this Court's authority, but to **investigate broader corporate and agency patterns of retaliation and obstruction that may fall under civil rights or criminal jurisdiction.**

**I. Fees and Costs**

- All filing fees, litigation costs, and any applicable legal fees (past, present, and future)

**J. Any Further Relief the Court Deems Just and Proper**

- Including attorneys' fees if permitted;

- Protective orders to prevent future retaliation;

- Public access to records and court-supervised compliance, as warranted by the systemic nature of the allegations.

As documented through internal account metrics and pipeline performance records, Plaintiff personally generated approximately **$51.89 million in active pipeline value** for Concentrix Corporation across a two-year span. This substantial economic contribution occurred **concurrently with increasing retaliation, forced productivity under medical distress, and eventual constructive discharge.** Plaintiff respectfully **demands monetary relief in the total amount of $175 million,** which reflects the cumulative harm suffered across all counts, including compensatory, punitive, statutory, and structural damages. This figure is based on the evidence set forth in Exhibits A through DD.9 and may be further itemized during **discovery, settlement negotiations, or trial proceedings.**

Plaintiff respectfully submits that this requested relief does not exceed the scope of actual harm nor the scale of proven economic exploitation — **it is a calibrated response to the cumulative violations, systemic failures, and irreparable reputational, professional, and constitutional damage documented across over thirty sworn exhibits.**

## CLOSING STATEMENT TO THE COURT

### This case is not merely about a job.

It is about what happens when an employee raises their voice within a system designed to **punish dissent and reward silence, misdirection, and procedural manipulation.**

It is about how **modern retaliation has evolved,** no longer limited to overt threats or disciplinary action, but waged instead through **metadata**, **omission**, **delay**, and **digital coercion**.

It is about the **institutions that failed to intervene**, despite detailed agency complaints, medical evidence, and forensic documentation.

And it is about the **millions of workers** who suffer retaliation in silence — **never protected, never vindicated, and never allowed to testify.**

Plaintiff **Emmanuel A. Lugo** stands before this Court **not only on behalf of himself, but on behalf of** every worker who has been **spiritually broken**, **psychologically baited**, or **procedurally erased** in the name of productivity, performance, or compliance.

This **First Amended Complaint**, and the accompanying Exhibits A through DD.9, **establish a deliberate pattern of retaliation, obstruction, and harm that demands judicial recognition and immediate redress.**

Plaintiff **expressly reserves the right** to initiate future legal proceedings against any and all co-conspirators, contractors, agents, insurers, digital forensics vendors, metadata-based surveillance operators, or third-party entities who may have **participated in, facilitated, concealed, or benefited from the retaliatory conduct, wage-related manipulation, spiritual targeting, or procedural interference described herein.**

Nothing in this civil action shall be construed as a waiver of Plaintiff's right to pursue future **civil, criminal, or administrative proceedings** against such unnamed individuals or entities. Plaintiff **notifies this Court of his express intent** to preserve all standing for related future actions in this or other appropriate jurisdictions.

**This amended complaint is not a demand for sympathy — it is a Declaration of Truth.**

**And a request for Justice.**

Respectfully submitted,

**/s/ *Emmanuel A. Lugo,***

*Pro Se – Plaintiff*

*Dated: **July 31st, 2025***

**VERIFICATION AND SIGNATURE**

I, Emmanuel A. Lugo, **declare under penalty of perjury under the laws of the United States of America** that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this **31st day of July, 2025 in Eagan, Minnesota.**

**/s/ Emmanuel A. Lugo**

Emmanuel A. Lugo

Pro Se Plaintiff

Dated: **July 31st, 2025**