UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| EMMANUEL A. LUGO, | ) |
|    Plaintiff, | ) |
| v. | )   **Case No.** 0:25-cv-02585-ECT-JFD |
| | ) |
| CONCENTRIX CORPORATION, | ) |
|    Defendant. | ) |

**EXHIBIT DD.2 INCENTIVE PLAN VS. ACTUAL ROLE MATRIX**

(Compensation Misalignment, Classification Manipulation, and Executive Workload Concealment)

## I. EXECUTIVE SUMMARY

This exhibit presents a comprehensive comparison between the official incentive compensation plans governing Plaintiff's role and the actual executive-level duties he was required to perform at Concentrix Corporation. While Plaintiff was classified under a Business Development Representative (BDR) role with a 33% incentive plan focused on lead generation and early-stage deals, he was concurrently tasked with AE-level responsibilities, including global account support, strategy briefings, technical translation, and onboarding initiatives.

This misalignment not only denied Plaintiff fair earnings and advancement but also concealed the true nature of his labor to shield the employer from legal, financial, and reputational consequences. The manipulation of opportunity attribution and the recycling of Plaintiff's deals under alternative IDs further obstructed compensation review and transparency.

## II. INCENTIVE STRUCTURE VS. FUNCTIONAL PERFORMANCE

| Category | Official Incentive Plan | Actual Role Experience |
|---|---|---|
| Title | Senior Business Development Representative (Grade 8B) | Functioned as Account Executive |
| Pay Structure | $65,000 base salary + 33% variable target | No title or pay adjustment despite strategic assignments |
| Incentive Criteria | Discovery Calls, MQLs, initial deal value (ECR) | Delivered high-value SQLs and executive pipeline visibility |
| Deal Attribution | Bonus tied to Stage 3+ deals and opportunity ownership | Many deals transferred or renamed post-handoff to executive sellers |
| Account Assignments | Not disclosed in plan; implied mid-market | Assigned Amazon, Google, Microsoft, Meta, Intuit |
| Dashboard Recognition | Based on manual entries and internal tagging | Contributions often erased, renamed, or excluded from review loops |
| Tool Access | Limited to BDR platform set | Denied Asana and AE-tier tools for months (see DD.1-A) |

## III. ACCOUNT SUPPRESSION & DEAL OBSTRUCTION TACTICS

Plaintiff's opportunities were often:

1. **Stalled or delayed by executive sellers under pretext**

2. **Renamed or cloned after being handed off, erasing audit trail**

3. **Flooded by IB lead reassignment cycles to prevent follow-up**

4. **Rejected for Stage 3 promotion until out of Plaintiff's visibility**

In one region (EMEA), over 25 deals handed directly to **EVP. Nora Boros** (EMEA-Francophone Region), for reassignment to Sales Director within the region and were later inaccessible to Plaintiff, despite clear evidence of his qualification work. These were never recorded under his Salesforce and Salesloft recorded meetings history obstructing incentive eligibility.

## IV. LEGAL IMPLICATIONS

- **FLSA Violation**: Plaintiff performed AE-classified labor under BDR incentive structures without corresponding pay or protections.

- **ERISA & Incentive Transparency Breach**: Concealing final deal closure from Plaintiff through opportunity renaming or reattribution denied Plaintiff rightful eligibility reviews.

- **Retaliation Suppression**: After performance surges, deal flow transparency was deliberately obfuscated, undermining Plaintiff's capacity to challenge suppression or appeal bonuses.

## V. SWORN DECLARATION

**I,** Emmanuel A. Lugo, **declare under penalty of perjury:**

**From 2023 through 2025,** I was told I would be evaluated and compensated based on discovery calls, early-stage MQLs, and handoff of qualified opportunities. But I was expected to function far beyond that role. I managed the top five global accounts. I trained colleagues. I translated content and created extensive write ups for Concentrix Senior Executive Directors and for international clients. And I delivered SQLs with dozens of millions of dollars in pipeline impact.

Yet I was never paid accordingly. Many of the deals I initiated were stalled, renamed, or reassigned without my knowledge. I was overloaded with new inbound leads while being blocked from following up on those I had already qualified and handed over to Senior Leadearship. Executive Directors and managers exploited this structure to conceal the scope of my contribution and deny me advancement, pay, or transparency. This was not just an oversight. It was a pattern.

Executed on this day, **July 31, 2025** in **Eagan, Minnesota.**

Respectfully submitted,
**/s/ Emmanuel A. Lugo**
*Pro Se* - Plaintiff
Dated: **July 31, 2025**

## VI. CROSS-EXHIBIT EVIDENCE

The incentive misalignment and manipulated performance metrics documented in Exhibit DD.2 are further substantiated by the following cross-referenced exhibits:

- **Exhibit DD.2-A** contains the 2023, 2024, and 2025 Incentive Plan Letters, which define shifting monthly targets and quotas later used to penalize Plaintiff despite performance.

- **Exhibit DD.6-A** and **Exhibit DD.3-A** (CNX-SFDC Dashboards) confirm that Plaintiff not only met but surpassed several metrics tied to incentive triggers, contrary to later retaliation narratives.

- **Exhibits DD.1-A and DD.1-B** establish that Plaintiff was retained at a Grade 8B level as acknowledged by Concentrix leadership, then deliberately suppressed in compensation and title after assuming advanced responsibilities.

- **Exhibits DD.5-A, DD.6-A, and BB.3** show that account transfers and buried opportunity sets were used as strategic retaliation tools, artificially deflating incentive outcomes while isolating Plaintiff from executive-tier accounts.

- **Exhibits DD.1-A and DD.4** jointly demonstrate that strategic assignments, including cross-regional executive account support, were intentionally omitted from incentive evaluation and pay review considerations, contributing to Plaintiff's psychological collapse.

- **Exhibits DD.1-A and DD.3-B** document the denial of Asana access, despite Plaintiff executing AE-level responsibilities, and further support the pattern of digital and tool-based obstruction impacting incentive eligibility.