# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| | ) | |
| EMMANUEL A. LUGO, | ) | |
| Plaintiff, | ) | |
| v. | ) | **Case No.** 0:25-cv-02585-ECT-JFD |
| | ) | |
| CONCENTRIX CORPORATION, | ) | |
| Defendant. | ) | |

## EXHIBIT DD.3 RETALIATORY PERFORMANCE REVIEW

(Suppression of Advancement, Psychological Containment, and Review Weaponization)

## I. EXECUTIVE SUMMARY

This exhibit presents a critical review of Plaintiff's 2024 Annual Performance Review and its retaliatory timing, structure, and psychological impact. Despite overperformance across core metrics, including exceeding discovery call quotas, SQL delivery, and strategic support across global accounts. Plaintiff was rated only as **"Successful."** This mid-tier evaluation was used to stall Plaintiff's promotion, erase leadership endorsements, and delay access to internal tools.

The review was issued during a period of increasing psychological distress, conflicting assignments, metadata-based retaliation, and post-escalation fatigue. It served as a containment tool not a developmental milestone and contributed directly to Plaintiff's collapse and constructive discharge.

## II. TIMELINE OF RETALIATORY REVIEW EVENTS

| Date | Event | Evidence |
|---|---|---|
| **Nov 2023-Dec-2024** | Strategic enablement across EMEA & LATAM | Performance Review (DD.3); DD.1–DD.2 |
| **Dec 2023** | Plaintiff begins training intern from Colombia | DD.5 |
| **Jan 2024** | Top-tier metrics reached: 173% call attainment; $47M+ SQLs | Dashboards; DD.2 |
| **Feb 2024** | Denied access to Asana despite executive assignment scope | DD.3-A (Escalation Memo); DD.1-A |
| **Feb 27, 2025** | Performance Review delivered: "Successful" (non-promotional) | Annual Performance Review (filed) |
| **Feb 28, 2025** | Internal escalation submitted: misalignment with Jen King, quota sabotage, Asana delay | DD.3-A |
| **March–May 2025** | No HR follow-up; retaliation and health impact escalate | DD.4; CC.4–CC.6 |

## III. ANALYSIS OF PERFORMANCE REVIEW LANGUAGE

| Review Content | Retaliatory Interpretation |
|---|---|
| **"Tasked to train LATAM peers and supported EMEA workflows."** | Acknowledges leadership; contradicts rating level |
| **"Focused on high-value accounts and translation support."** | Confirms AE-level scope of work |
| **"Rating: Successful"** | Used to block AE candidacy and suppress progression |
| **"More experience needed managing internal messaging."** | Gaslighting language; ignores sabotage from conflicting managers |
| **"Asana access under discussion."** | False. Tool had been approved and was deliberately withheld for weeks |

## IV. LEGAL AND PSYCHOLOGICAL IMPLICATIONS

- **Constructive Retaliation**: Performance review language was carefully written to praise Plaintiff just enough to mask suppression, while denying tangible career elevation.

- **ADA Violation**: Review made no mention of Plaintiff's known health distress, despite HR's awareness of medical risk, retaliation, and mental strain.

- **FLSA Misclassification Confirmation**: Review documents AE-level workload while tying performance evaluation to a BDR incentive framework, confirming labor abuse.

## V. SWORN DECLARATION

**I,** Emmanuel A. Lugo, **declare under penalty of perjury:**

My 2024 performance review was not a reflection of my actual work. It was a weaponized containment tool designed to suppress my advancement and destabilize me psychologically. I exceeded every quota. I trained others. I led enablement work across Latin America and Europe. I was trusted with Amazon, Meta, and Intuit accounts. I even mentored new hires.

But my rating said only **"Successful."** This was a message: You can work at the level of an AE, but we will still call you a BDR. We will not promote you. We will praise your efforts while cutting off your access to the tools you need. This review and the silence that followed when I escalated - broke me. Executed on this day, **July 31, 2025** in **Eagan, Minnesota.**

Respectfully submitted,
**/s/ Emmanuel A. Lugo**
*Pro Se* - Plaintiff
Dated: **July 31, 2025**

## VI. CROSS-EXHIBIT EVIDENCE

The retaliatory review pattern and psychological containment demonstrated in Exhibit DD.3 are further corroborated by the following cross-referenced exhibits:

- **Exhibits DD.1 and DD.2** establish strategic workload misalignment, including Plaintiff's executive-level responsibilities across LATAM, EMEA, and high-value accounts, which contradicted the "Successful" rating later weaponized in the performance review.

- **Exhibits DD.1-A and DD.3-A** show that Plaintiff was deliberately denied access to Asana and other internal tools despite being assigned executive-tier workstreams, reinforcing the retaliatory nature of the evaluation.

- **Exhibits DD.4 and CC.5** provide supporting documentation of performance suppression, workload stacking, and deliberate HR silence following Plaintiff's internal escalation on February 28, 2025.

- **Exhibits CC.4 and CC.6** confirm that the performance review made no reference to Plaintiff's known mental health risks, active retaliation complaints, or ADA-eligible conditions—despite HR's full awareness of the situation at the time.

- **Exhibits DD.8 and BB.3** demonstrate the cognitive and emotional harm caused by the review's timing, manipulative language, and lack of support—contributing directly to Plaintiff's collapse and subsequent legal action.