UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| EMMANUEL A. LUGO,  ) | |
| Plaintiff,  ) | |
| v.  ) | **Case No.** 0:25-cv-02585-ECT-JFD |
|  ) | |
| CONCENTRIX CORPORATION,  ) | |
| Defendant.  ) | |

**EXHIBIT DD.4 - CONSTRUCTIVE DISCHARGE & PSYCHOLOGICAL COLLAPSE**

(Mental Health Breakdown, Cumulative Retaliation, and Role Identity Erasure)

## I. EXECUTIVE SUMMARY

This exhibit documents Plaintiff **Emmanuel A. Lugo's** constructive discharge from **Concentrix Corporation,** driven by **sustained retaliation, misclassification, psychological pressure, and internal containment.** Despite consistently outperforming across strategic accounts, Plaintiff was denied advancement, subjected to role suppression, and psychologically destabilized by contradictory instructions, AI-based interference, and silence from HR and leadership even after raising emotional distress and medical red flags.

**By mid-2025,** the cumulative impact of these actions triggered a psychological breakdown that left Plaintiff unable to continue working. He was not terminated formally, nor did he resign voluntarily he was forced out functionally and emotionally, with no meaningful recourse or accommodation. This constitutes a textbook case of constructive discharge under federal and state law.

## II. TIMELINE OF CONSTRUCTIVE DISCHARGE

| Date | Event | Supporting Exhibits |
|---|---|---|
| Aug 11, 2023 | Hired as Sr. BDR; incentive plan signed | Offer Letter; DD.1 |
| Nov 2023 - Feb 2024 | Assigned global accounts, trained LATAM intern, began overperformance | DD.1; DD.2; DD.5 |
| Feb 2024 | Denied access to Asana tools despite approval; delayed for >3 weeks | DD.3-A; DD.1-A |
| Feb 27, 2025 | Retaliatory performance review issued | DD.3 |
| March-May 2025 | Escalation submitted documenting breakdown, misalignment, fatigue | DD.3-A |
| May - June 2025 | STD paperwork blocked; benefit access fails; Plaintiff experiences sleep disruption, cognitive decline, panic episodes | CC.3–CC.6 |
| May 2025 | Plaintiff ceases working amid emotional collapse and hostile conditions | DD.5; BB.3 |
| May - July 2025 | Surveillance and phishing activity resumes; internal access trails erased | BB.3–BB.5; DD.6–DD.7 |

## III. PATTERNS OF STRUCTURAL AND PSYCHOLOGICAL HARM

### 1. Chronic Misclassification and Identity Breakdown

Plaintiff functioned at an AE level while being locked into a BDR title and denied access to AE systems. Over time, this mismatch created cognitive dissonance, fatigue, and internal invalidation. Despite being told he was performing well, Plaintiff was kept structurally invisible.

2. **Escalation Without Relief**

Plaintiff raised internal concerns about mental strain, clarity sabotage, and quota overload. No response, protection, or formal accommodation was ever offered. The February 2025 review and Asana delay compounded the harm.

3. **Benefit and Access Retaliation**

After raising internal concerns, Plaintiff's access to benefits was actively obstructed, including interference with medication, ADP records, STD claims, and healthcare systems. This was timed to deepen psychological stress and drive resignation without accountability.

4. **Metadata and Surveillance-Driven Fear**

Following agency filings and court submissions, Plaintiff experienced digital targeting, spoofing attempts, Lockdown Mode alerts, and tracker-laced emails targeting his spiritual identity. These created an ongoing perception of surveillance, fueling mental collapse.

## IV. LEGAL SIGNIFICANCE

- **Constructive Discharge**: Plaintiff's departure from Concentrix was not voluntary. He was forced to withdraw due to an intolerable and escalating environment, devoid of institutional relief or legal protection.

- **ADA and FMLA Violations**: Defendant failed to respond to health-based distress, declined to accommodate STD needs, and interfered with medically necessary leave.

- **FLSA and Title VII Retaliation**: Plaintiff was psychologically broken by structural misclassification and denied safe avenues to challenge exploitation.

## V. SWORN DECLARATION

**I,** Emmanuel A. Lugo, **declare under penalty of perjury:**

I did not resign from Concentrix voluntarily. I was psychologically and functionally pushed out. I worked tirelessly, delivered more than was expected, and supported my team across continents. But I was ignored. I was suppressed. I was told I was "successful" while being denied promotion, system access, and human protection.

I raised the alarm multiple times. I said I was overwhelmed. I said I was emotionally deteriorating. I asked for help. But the retaliation only deepened. My benefits disappeared. My tools were delayed. My performance review was used as a shield to cover up their sabotage. My spirituality, identity, and safety were targeted. And eventually, I collapsed. This was not a personal choice. It was systemic harm. This was a constructive discharge.

Executed on this day, **July 31, 2025** in **Eagan, Minnesota.**

Respectfully submitted,
**/s/ Emmanuel A. Lugo**
*Pro Se* - Plaintiff
Dated: **July 31, 2025**

## VI. CROSS-EXHIBIT CORROBORATION

The constructive discharge and mental collapse documented in Exhibit DD.4 are substantiated by the following exhibits:

- **Exhibits DD.1, DD.2, and DD.3** confirm Plaintiff's consistent overperformance while being locked into a misclassified title, denied tools such as Asana, and subjected to a retaliatory February 2025 performance review despite leading global accounts.

- **Exhibit DD.3-A** provides direct documentation of Plaintiff's internal escalation raising concerns of psychological distress, emotional collapse, and structural sabotage—none of which received HR protection or formal accommodation.

- **Exhibits CC.3 through CC.6** contain specific evidence of interference with disability paperwork, delayed access to prescriptions, UHC login failures, and ADP metadata suppression—all contributing to Plaintiff's inability to continue working.

- **Exhibit DD.5** highlights the delivery of high-level, cross-functional assignments without recognition or promotion, deepening Plaintiff's sense of invisibility and driving exhaustion under retaliatory expansion.

- **Exhibits BB.3 through BB.5 and DD.6 through DD.7** confirm a digital escalation timeline marked by metadata attacks, spoofed messages, device pings, and Lockdown Mode activations, which aligned with Plaintiff's public speech and filings—contributing to the psychological toll that finalized the collapse.